UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EVELYN HANNA,

                                    Plaintiff,

            v.                                    5:13-cv-1164

ONONDAGA-CORTLAND-MADISON
BOCES,

                                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff Evelyn Hanna commenced the instant action against Defendant

Onondaga-Cortland-Madison BOCES ("BOCES"), alleging violations of the Age

Discrimination in Employment Act, 29 U.S.C. § 623, *et seq*.  Presently before the Court is

Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).

I.      FACTS

        This case concerns Plaintiff's claims that Defendant discriminated against her on

the basis of her age in failing to hire her for certain available positions as a school social

worker with BOCES.[1]

---

[1]Defendant filed the instant motion based on affidavits submitted to the Court and before the
parties conducted any depositions or engaged in any discovery.  Plaintiff answered the motion and has
not filed any sort of declaration or motion pursuant to Federal Rule of Civil Procedure 56(d) ("If a
nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential
to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain
affidavits or declaration or to take discovery; or (3) issue any other appropriate order").

At all relevant times, Plaintiff Evelyn Hanna worked for Defendant BOCES as a Teaching Assistant/Interpreter in the BOCES deaf and hard of hearing program ("DHOH"). Defendant's Statement of Material Facts, Dkt. no. 10-1 ("Defendant's Statement"), at ¶ 1. The DHOH program is a special education program designed to aid students in school districts using BOCES services who have hearing disorders and impairments. Id. at ¶ 2.

BOCES advertised four openings for the position of School Social Worker during the 2012 calendar year. Id. at ¶ 4. Plaintiff submitted application packets for three of those positions via New York state's "On-line Application System for Educators ("OLAS"), an on-line system for posting jobs and recruiting employees aimed at teachers and school administrators in the state. Id. at ¶¶ 4-5.

Defendant maintains that BOCES follows a specific practice in soliciting and evaluating applications. Id. at ¶ 7. After advertising a position on OLAS, BOCES usually collects application packets for around two weeks. Id. After those two weeks have passed, personnel forwards the list of candidates to the BOCES department seeking to fill the position. Id. Most applications typically come through the OLAS system. Id. The BOCES Special Education Department has a procedure established to evaluate job applications. Id. at ¶ 8. Once the applications are received, "an administrator" examines those applications. Id. If a candidate appears to have "good credentials and relevant training or experience," the Department will put that candidate on a list to be called for an interview. Id. Plaintiff admits that BOCES follows such procedures in most cases, but denies that in her case BOCES engaged in the typical process of screening resumes. See Plaintiff's Response to Defendant's Statement of Material Facts, Dkt. No. 17, at ¶ 8; Plaintiff's Affidavit, Dkt. 17-1 at ¶ 28 (contending that a hiring decision was made based on a candidates "age and personal

relationships with administrators."). Defendant claims that "a large number" of candidates applying for every position can be eliminated quickly because they lack "the right background or level of experience." Defendant's Statement at ¶ 9. Plaintiff argues that she was denied an opportunity to interview, even though her resume demonstrated that her background and training qualified her for the positions. Plaintiff's Response at ¶ 9. She claims that she was qualified for the positions for which she applied. Plaintiff's Affidavit at ¶¶ 28, 33, 36, 38. In any case, Defendant did not offer Plaintiff an interview after this initial screening. Defendant's Statement at ¶ 10. Plaintiff also disputes Defendant's contention that she did not receive an interview because she lacked the proper training and experience. Plaintiff's Response at ¶ 9; see also, Plaintiff's Affidavit at ¶¶ 28, 33, 36, 38.

### i. Lafayette Program

On March 30, 2012, Defendant posted an opening for two School Social Worker positions within BOCES's Lafayette program. Defendant's Statement at ¶ 11. The job announcement stated that candidates were "required" to have "New York State certification as a School Social Worker," though persons with a "M[asters in] S[ocial] W[ork]" would also be considered. See Exh. A to Defendant's Brief in Support, Dkt. 10-4. Applicants were also required to have "[e]xperience working with students with emotional disabilities at the elementary school level." Id. The Lafayette program is aimed at students with serious emotional disabilities. Defendant's Statement at ¶ 12. Twenty-two candidates submitted OLAS applications for the two positions. Id. at ¶ 13. Another candidate, already a BOCES employee, submitted a resume outside of the OLAS system. Id. BOCES eventually hired two candidates to fill those positions, Heather Vitale and Lauren Hibbard. Id. at ¶ 14. The parties agree that both Ms. Vitale and Ms. Hibbard were significantly younger than Plaintiff.

Defendant contends that Ms. Hibbard possessed the relevant educational credentials and had several years of relevant work experience. Id. at ¶ 15. Hibbard had a degree from SUNY Brockport, specializing in alcohol and substance abuse topics, and she had worked for two years at Tully Hill Chemical Dependency Clinic and Confier Park Outpatient Clinic. Id. Defendant asserts that these qualifications were "attractive" to BOCES because students in the Lafayette program frequently have emotional issues connected to chemical dependencies. Id. Moreover, as the job posting required, Ms. Hibbard had experience working with children. Id. Plaintiff admits that Ms. Hibbard possessed these qualifications, but "denies that [she] was not the better candidate for the position, based upon an objective analysis of relevant qualifications." Plaintiff's Response at ¶ 15. Plaintiff emphasizes that BOCES administrators were well aware of her strengths at working with disabled children due to her previous employment, and that her training as a staff member in the DHOH had given her experience in therapeutic crisis intervention, restraint training, and in "providing coping skills that will encourage positive outcomes" for such children. Plaintiff's Affidavit at ¶¶ 35-36, 50-51.

Defendant contends that Heather Vitale had nearly two years of experience working as a Teaching Assistant in two BOCES programs at the time she was hired for the School Social Worker position. Defendant's Statement at ¶ 16. According to Defendant, Ms. Vitale's daily work with students who had "very limited cognitive function or severe behavioral issues" represented almost "two years of very relevant, on-point experience" which left her "well qualified for the position of School Social Worker." Id. Plaintiff disputes that Vitale had the necessary qualifications, and contends that she received her position due to a personal relationship with supervisors. Plaintiff's Answer at ¶ 16; Plaintiff's Affidavit at ¶¶ 22-28.

Plaintiff contends that she first met Vitale in 2011, while both were Syracuse University students.  Plaintiff's Affidavit at ¶ 22.  At that time, Vitale informed Plaintiff that she had obtained a paid internship at the BOCES Special Education program, and that she had been working at the BOCES Career Training Center (CTC) for the previous year.   Id. at ¶ 23. Plaintiff had been unable to obtain even an unpaid internship during the 2011-2012 school year.  Id.  Later, Plaintiff learned that Vitale had been transferred from her Lafayette assignment to one at the CTC.  Id. at ¶ 24.  Vitale obtained this position even though she had not completed her Social Work degree program; she served under "supervised" conditions. Id. at ¶ 25.  Plaintiff contends that Vitale had a "friendly" relationship with two supervisors, Mrs. Grund and Mrs. Koch, and had even babysat for Mrs. Koch's children.  Id. at ¶¶ 26-27.

### ii.  McEvoy Program

Defendant posted a second School Social Worker position, this one for the BOCES McEvoy program on May 30, 2012.  Defendant's Statement at ¶ 17.  The job announcement stated that candidates were "required" to have "New York State certification as a School Social Worker," though persons with a "M[asters in] S[ocial] W[ork]" would also be considered.  See Exh. D to Defendant's Brief in Support, Dkt. 10-4.  Applicants were also required to have "[e]xperience working with students with emotional disabilities at the elementary school level."  Id. The McEvoy program is aimed at special education students suffering from "behavioral challenges."  Defendant's Statement at ¶ 18.  The Defendant considers these students "some of the most difficult to teach."  Id.  Twenty-one candidates, including Plaintiff, applied for this position.  Id. at ¶ 19.  Defendant claims that BOCES re-posted the School Social Worker position after determining that none of the initial applicants were qualified.  Id. at ¶ 20. Plaintiff lacks sufficient knowledge to respond to this claim.

Plaintiff's Answer at ¶ 20.    In any case, the Personnel Department sent Plaintiff and the other initial applicants an official rejection notice. Id. at ¶ 21. Plaintiff did not re-submit her application for either of the two subsequent re-postings of this position. Id. at ¶ 22. She denies that she was required to re-submit her application to be considered after the re-post. Plaintiff's Statement at ¶ 22.

Defendant eventually hired Timothy Hummel to fill the McEvoy position. Id. at ¶ 23. According to the Defendant, Mr. Hummel had worked for almost ten years in childhood and adolescent counseling, as well as social work. Defendant's Statement at ¶ 24. He had worked for "many years" at Liberty Resources, a facility in Syracuse that offered private behavioral counseling to patients. Id. Mr. Hummel had also previously worked as a school social worker in the Jordan-Elbridge (N.Y.) school district. Id. Defendant contends that this experience provided Mr. Hummel with "experience in all facets of working with children suffering from severe behavioral challenges" and experience with children dealing with "serious disorders on the autism spectrum." Id. According to Defendant, this experience "was relevant to the McEvoy position." Id. Mr. Hummel was also forty-nine years old at the time of his hiring. Id. at ¶ 25. Plaintiff does not deny that Hummel possessed these skills. Plaintiff's Statement at ¶ 24. Instead, she "denies that [she] was not the better candidate for the position, based upon an objective analysis of relevant qualifications." Id. As she claimed in reference to the position assumed by Hibbard, Plaintiff emphasizes that BOCES administrators were well aware of her strengths at working with disabled children due to her previous employment, and that her training as a staff member in the DHOH had given her experience in therapeutic crisis intervention, restraint training, and in "providing coping skills

that will encourage positive outcomes" for such children.  Plaintiff's Affidavit at ¶¶ 35-36, 50-51.

### iii.  Career Training Center

Defendant posted a part-time School Social Worker position at the Career Training Center on August 17, 2012.  Defendant's Statement at ¶ 26.  The job announcement stated that candidates were "required" to have "New York State certification as a School Social Worker," though persons with a "M[asters in] S[ocial] W[ork]" would also be considered.  See Exh. M to Defendant's Brief in Support, Dkt. 10-4.  Applicants were also required to have "[e]xperience working with students with emotional disabilities at the elementary school level." Id.  According to the Defendant, Plaintiff did not apply for this position.  Defendant's Statement at ¶ 27.  Plaintiff neither admits nor denies this allegation, but instead in response offers a vague reference to her affidavit and complaint.  She does not point to any evidence of record to show she applied for this position.  Plaintiff's complaint alleges that she applied for three School Social Worker positions with the Defendant in 2012.  See Complaint, Dkt. No. 1, at ¶ 15.  Two of those positions were in the Lafayette Program and one was in the McEvoy Program.  Id. at ¶ 16.  None of the positions were the part-time one at the CTC discussed in paragraphs 26 and 27 of Defendant's statement.  Evidence supplied by the Defendant lists the names of eleven candidates for the position.  See Exh. M to Defendant's Brief, Dkt. 10-4.  Plaintiff's name is not on that list.  Id.  One of the persons contained on the list of applicants was ultimately hired for that position.  Id.

### iv.  Plaintiff Files Her Complaint

After failing to obtain even an interview for any of the positions for which she applied, Plaintiff filed a charge with the New York State Division of Human Rights.  See

Complaint, Dkt. No. 1, at ¶ 10.  Plaintiff also filed her charge with the Equal Employment

Opportunity Commission ("EEOC"), and eventually received a right-to-sue letter from the

EEOC.  Id. at ¶¶ 11-12.  The instant Complaint alleges that Plaintiff, who "was over the age

of 40,"[2] was "qualified and able to perform the essential functions of her position, and all

positions to which she applied or expressed an interest in obtaining with the Defendant,

despite her age."  Id. at ¶¶ 6-7.  Plaintiff avers that while she was employed by Defendant in

2012 she applied for three School Social Worker job positions posted by Defendant.  Id. at ¶

15.  Two of those positions were offered through Defendant's "Lafayette Program" and the

third was through Defendant's "McEvoy Program."  Id. at ¶ 16.  Defendant did not hire

Plaintiff for any of those positions.  Id. at ¶ 17.   Instead, Plaintiff insists, Defendant hired

younger, less qualified individuals for those positions.  Id. at ¶ 18.   Plaintiff contends that

Defendant's actions violated her rights under the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621, et seq.

### v. Defendant Files the Motion

After the Plaintiff filed her complaint, but before the parties had engaged in any

substantial discovery, Defendant filed the instant motion for summary judgment.  Plaintiff

responded to that motion, bringing the case to its present posture.

## II.    STANDARD OF REVIEW

Defendant has filed a motion for summary judgment.  Under Federal Rule of Civil

Procedure 56, "[s]ummary judgment is appropriate if there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law."  Gorzynski v.

---

[2]None of Plaintiff's filings state her exact age.

JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (citing FED. R. CIV. P. 56(c)).  This standard provides that "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Id. (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007)).  In making this determination, the Court is "required to resolve all ambiguities and draw all possible factual inferences in favor of the party against whom summary judgment is sought."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)).  Summary judgment is appropriate when "it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor."  Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 86 (2d Cir. 1996).

III.    DISCUSSION

Plaintiff's Complaint alleges age discrimination in Defendant's failure to hire her for any of the positions for which she applied. Defendant seeks summary judgment on Plaintiff's claims related to each of those positions.

A.    Age Discrimination in Employment Act (ADEA)

Plaintiff raised her claim under the Age Discrimination in Employment Act ("ADEA"), which makes it "unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges" on the basis of age.  29 U.S.C. § 623(a)(1).  The ADEA protects "individuals who are at least 40 years of age."  29 US.C. § 631(a).

When a plaintiff, as here, brings an employment discrimination claim under the ADEA and lacks direct evidence of discrimination, the court applies a "three-part burden shifting" process in evaluating the claim.  McPherson v. N.Y City Dep't of Educ., 457 F.3d

211, 215 (2d Cir. 2006); see also, Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998) (permitting a plaintiff to prove age discrimination through circumstantial evidence rather than direct evidence because "'an employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in the employee's personnel file attesting to discriminatory intent.'") (quoting Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1999)).  First, the plaintiff "bears the 'minimal' burden of setting out a prima facie discrimination case[.]" Id.  To establish a prima facie case of age discrimination, a plaintiff must prove four elements: (1) that she was " a member of the protected class" at the time of the incident complained of; (2) that she "was qualified for the job"; (3) that she "suffered an adverse employment action"; and (4) that "the adverse employment action occurred under circumstances giving rise to an inference of discrimination," such as being "replaced by someone 'substantially younger.'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005). Once the plaintiff meets this burden, the plaintiff "is then aided by a presumption of discrimination" and the defendant must offer "a 'legitimate, non discriminatory reason' for the adverse employment action[.]" Id.  After the defendant offers such a reason for the employment action, "the presumption evaporates and the plaintiff must prove the employer's proffered reason was pretext for discrimination." McPherson, 457 F.3d at 215.   To prove the proffered reason was pretext in the ADEA context, a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action' and not just a contributing or motivating factor."  Gorzynski, 596 F.3d at 106 (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180, 128 S. Ct. 2343 (2009)).

        Defendant contends that no evidence could support a finding that BOCES's hiring decisions were motivated by discrimination, and seeks summary judgment on each one.  The

Court will examine each hiring decision about which Plaintiff complains in reference to the above-stated standards.

### B.    Lafayette Program–Position Awarded to Ms. Hibbard

As a general matter, Defendant argues that the evidence establishes that the candidate hired for each position was more qualified than the Plaintiff.  Defendant contends that summary judgment should be granted on this basis.  With reference to Lauren Hibbard, who was hired for one of the two Lafayette Program positions for which Plaintiff applied, Defendant points out that Hibbard's resume demonstrated that she had spent nearly three years working as a counselor with children, implementing treatment plans and conducting psychosocial assessments.  Hibbard also interned for two years with children at a BOCES program.  Defendant found this experience appealing, since many children in the Lafayette program suffered from emotional problems related to alcohol problems and substance abuse, areas in which Hibbard had expertise.  Defendant contrasts this experience with Plaintiff's, and contends that Plaintiff's resume did not demonstrate the same experience of dealing with children in emotionally difficult circumstances.  On that basis, Defendant insists, Hibbard was a better choice for the position.

Defendant does not argue that Plaintiff has failed to make out a prima facie case with respect to the position for which BOCES hired Ms. Hibbard.  Instead, Defendant focuses the argument on the reasons why BOCES hired Ms. Hibbard instead of the Plaintiff.  In that respect, Defendant's initial argument articulates legitimate non-discriminatory reasons for Defendant's hiring decision: that, given the needs for the position, BOCES hired an employee who had more extensive relevant experience and training than Plaintiff did.  The Court finds that Defendant, in pointing to this evidence, has met its burden of providing

legitimate non-discriminatory reasons for the employment decision.  For a defendant providing a "legitimate, non-discriminatory reason" for the employment decision, the "burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., 530 U.S. 143, 120 St. 2097, 2106 (2000) (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509, 113 S. Ct. 2742 (1993).   In explaining the reasons for refusing to hire the plaintiff, a defendant "'must be clear and specific.'" Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 132 (2d Cir. 2012) (quoting Mandell v. County of Suffolk, 316 F.3d 368, 381 (2d Cir. 2003)).  Defendant has met this burden by pointing to specific reasons for the hiring decision based on training and experience.  The burden now shifts to the Plaintiff "to prove that the employer's stated reasons are merely pretextual and that age discrimination was the true reason for the adverse employment action." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

        In arguing that Defendant's stated reasons related to qualifications are mere pretext masking the age-discriminatory motivations for Defendant's hiring decisions, Plaintiff offers no detailed analysis, and instead simply points to several paragraphs from her affidavit filed in response to the summary judgment motion.  See Plaintiff's Affidavit, at ¶¶ 19, 20, 28, 38, 101.  Paragraph 19 states that Plaintiff had recognized over her years of working as an interpreter for Defendant that she had strong skills in behavior management, and had been encouraged by supervisors to seek additional education in an area that would allow her to use those skills.  Id. at ¶ 19.  She completed a Master's Degree in Social Work at Syracuse University in December 2011, graduating with a 3.67 GPA.  Id. at ¶ 20.[3]  Plaintiff admits that

---

[3]Paragraphs 28 and 38 refer to Ms. Vitale's qualifications, which will be discussed below.

her initial resume may not have reflected these skills, but contends that she revised that resume in May 2013. Id. at ¶ 101. This claim offers little support to her position, as the revisions occurred after the hiring decisions about which she complains.

In her filings in response to Defendant's statement of material facts, Plaintiff points to additional facts she claims supports her position that Defendant's stated reasons for hiring Ms. Hibbard and rejecting her application were not the real reasons, and that the real reasons were discriminatory ones. Plaintiff admits that Ms. Hibbard possessed appropriate qualifications for the position, but "denies that [she] was not the better candidate for the position, based upon an objective analysis of relevant qualifications." Plaintiff's Response at ¶ 15. Plaintiff emphasizes that BOCES administrators were well aware of her strengths at working with disabled children due to her previous employment, and that her training as a staff member in the DHOH had given her experience in therapeutic crisis intervention, restraint training, and in "providing coping skills that will encourage positive outcomes" for such children. Plaintiff's Affidavit at ¶¶ 35-36, 50-51. She contends that any claim that she did not have the appropriate skills to perform the task ignores her actual training and record, and demonstrates that the stated reason for the hiring decision was not the real reason.

At this point in the litigation, the Court must find that Plaintiff has presented evidence that the stated reasons for the Defendant's hiring decision were not the real reasons. Defendant claims to have hired Ms. Hibbard because, unlike Plaintiff, Hibbard had experience and training working with children. Plaintiff has presented evidence that, if believed by a jury, would cause the jury to believe that these stated reasons were not Defendant's real reasons. Evidence presented by Plaintiff could be used by a jury to find that Defendant knew that Plaintiff had the skills Defedant supposedly sought, and a jury could

therefore find that her application was not rejected for the reasons stated by the Defendant. At this point in the litigation, the Court must conclude that a question of fact exists on this matter.

Defendant asserts that even if the jury could find evidence of pretext, Plaintiff's filings demonstrate that she could not prove age discrimination. Defendant argues that because Plaintiff has pointed to reasons other than age discrimination in the employment decision, Plaintiff cannot prove that age discrimination was the "but-for" cause of Defendant's decision not to hire her. For this proposition, Defendant relies on Gorzynski v. JetBlue Airways Corp., 596 F.3d 93 (2010). From Defendant's perspective, Gorzynski establishes that if a Plaintiff points to any factor other than age in a hiring decision, that Plaintiff cannot prove that age was the "but for" cause of the hiring decision. Defendant's position ignores both the plain meaning of the phrase "but for" and the Gorzynski decision. First, to be the "but for" cause of something is not to say that the cause was the sole motivating factor, but instead is to say that, without that factor, none of the other expressed reasons for the decision would have caused the decision to come out that way. I might say I dislike the color, detailing, and options on a car, but, if the car were $2000 cheaper, I would have looked past those defects and purchased the car. In that situation, lots of factors made me dislike the vehicle, but the price was the "but-for" cause of my purchasing decision. Similarly, in this case, Plaintiff may assert that there were multiple reasons for the hiring decision, but a jury could still find that none of those reasons would have mattered had Plaintiff been younger. Age would then be the "but for" cause of the hiring decision.

The facts of the Gorzynski case also fail to support Defendant's position. In Gorzynski, the Second Circuit Court of Appeals was confronted with the question of whether

the burden-shifting framework traditionally applied in age-discrimination cases still applied in light of the Supreme Court's finding in <u>Gross v. FBL Financial Services</u>, 557 U.S. 167, 129 S. Ct. 2343 (2009), that the ADEA requires a showing by a plaintiff that "'age was the 'but-for' cause of the challenged adverse employment action.'" <u>Gorzynski</u>, 596 F.3d at 106.  The Court concluded that the burden-shifting test still applied, but also found that Plaintiff had created a question of fact as to the "but-for" motive of Defendants regardless of what test applied.  <u>Id.</u> at 106-107.  Under the circumstances, the ultimate question for the Court was whether plaintiff "raised sufficient evidence that her age was a 'but for' cause of [defendant's] decision to fire her."  <u>Id.</u> at107.  To do so, the Court found, "it is important to consider whether the explanations that [defendant] gave for Gorzynski's firing were pretextual."  <u>Id.</u>

The Court examined the Defendant's stated reasons for the employment decision and found that Plaintiff had produced evidence that those stated reasons were not the actual reasons for the decision.  <u>Id.</u> at 107-108.  The Court also noted that Plaintiff had produced evidence that younger workers were judged and disciplined differently from Plaintiff, and found this treatment evidence of pretext as well.  <u>Id.</u> at 108-109.  In the end, "the cumulative weight of this evidence," the Court found, could lead a reasonable jury to find that Plaintiff's age "was the 'but-for' cause of Gorzynski's termination."  <u>Id.</u>  In <u>Gorzynski</u>, then, the Circuit Court focused its analysis on whether the Plaintiff had introduced evidence of pretext, which would permit a jury to decided that age was the "but-for" consideration in the hiring decision. The Court found that Plaintiff had met her burden under those circumstances and permitted the jury to reach the decision of whether age was the "but-for" consideration in the employment decision.  This approach is logical in a situation where the burden-shifting test is still used.  The test was designed, after all, for situations where direct evidence of

discrimination does not exist. To adopt the Defendant's position, the Court would be required to conclude that direct evidence is always necessary to prove age discrimination, even in the burden-shifting context. As the Circuit Court has ruled otherwise, the Court will not adopt this position. Plaintiff has introduced evidence of pretext, and therefore a jury must decide whether the stated reasons were a mere pretext that masked the real, "but-for" motivation for the hiring decision: Plaintiff's age.

Moreover, the way that the facts supporting this motion have been presented to the Court also counsel against awarding Defendant summary judgment on this portion of the claim. The Court notes that Defendant filed this motion before any discovery had actually occurred, and before Plaintiff had an opportunity to examine any of Defendant's records in the case or take any depositions. Defendant therefore had an opportunity to shape the evidence before the Court in a way that Plaintiff could not. The evidence produced by the two sides in this case demonstrates this danger: Plaintiff could produce only an affidavit that articulated her suspicions about Defendant's conduct, while Defendant could attach exhibits and produce affidavits from parties Plaintiff would surely have sought to depose. The Second Circuit Court of Appeals has "emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases[.]" Chertkova, 92 F3d at 87. In such matters, "the employer's intent is normally at issue," and "it is rare indeed to find in an employer's records proof that a personnel decision was made for a discriminatory reason[.] Id. As such, "affidavits and materials . . . must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination." Id. Here, given the fact only one side has had an opportunity to examine all of the evidence in this case, the Court finds that granting summary judgment with reference to this claim is inappropriate. The Court will deny the

motion without prejudice to Defendant raising the issue again after the Plaintiff has had an opportunity to examine the evidence and depose witnesses.

### C.    Lafayette Program–Position Awarded to Ms. Vitale

Plaintiff also asserts that age discrimination motivated Defendant's decision to award the second Lafayette position to Ms. Vitale.  As with the first Lafayette position, Defendant argues that the hiring decision related to Ms. Vitale was based on her qualifications and experience.  Vitale had been a Teaching Assistant in two special education programs run by the Defendant for two years.  Those programs enrolled students who had severe cognitive, behavioral, or emotional issues.  Defendant concluded that Ms. Vitale had worked very skillfully with these difficult students, and that these skills would could translate successfully into a position as a School Social Worker.  Moreover, though Vitale had not yet completed her MSW degree, Defendant had confirmed that Vitale was eligible for certification as a School Social Worker through New York State.

By pointing to this evidence and by stating clearly the reasons for the hiring decision, Defendant has met its burden of production to demonstrate legitimate, non-discriminatory reasons for the hiring decision.  From Defendant's perspective, Vitale had the skills and qualifications that BOCES was seeking in a school social worker and those skills were more appealing than those possessed by the Plaintiff.  Defendant, which had observed relevant and translatable skills during Vitale's time as a teaching assistant, states that the decision to hire Vitale was motivated by these qualities, and not any discriminatory factor. The Court finds that Defendant has met its burden in this respect, and the burden now shifts back to the Plaintiff to demonstrate that the reasons stated by the Defendant are mere pretext hiding a discriminatory intent.

As with the position awarded to Ms. Hibbard, the Court finds that Plaintiff points to evidence that a jury could use to conclude that the stated reasons for the hiring decision were not the real reasons. This evidence indicates that Plaintiff had the experience and training that Defendant claims she lacked and challenges Defendant's assertion that Vitale had the necessary qualifications. Plaintiff's Answer at ¶ 16; Plaintiff's Affidavit at ¶¶ 22-28. Plaintiff first met Vitale in 2011, while both were Syracuse University students. Plaintiff's Affidavit at ¶ 22. At that time, Vitale informed Plaintiff that she had obtained a paid internship at the BOCES Special Education program, and that she had been working at the BOCES Career Training Center (CTC) for the previous year. Id. at ¶ 23. Plaintiff had been unable to obtain even an unpaid internship during the 2011-2012 school year. Id. Later, Plaintiff learned that Vitale had been transferred from her Lafayette assignment to one at the CTC. Id. at ¶ 24. Vitale obtained this position even though she had not completed her Social Work degree program; she served under "supervised" conditions. Id. at ¶ 25. Plaintiff contends that Vitale had a "friendly" relationship with two supervisors, Mrs. Grund and Mrs. Koch, and had even babysat for Mrs. Koch's children. Id. at ¶¶ 26-27. Plaintiff also alleges that the resume supplied by Ms. Vitale when she applied for the Lafayette position did not contain the appropriate qualifications, and that Ms. Vitale later submitted a resume that appeared to meet those qualifications. Id. at ¶ 97(i). Plaintiff asserts that this resume was created after Vitale's hiring to justify that action. Id. Plaintiff also points to information on the BOCES website that indicates that Vitale had not worked for BOCES as long as Defendant claims she had. Id. at ¶ 97(v-vii).

Plaintiff has thus presented evidence that the stated reasons for the hiring decision were not the real reasons, and has in that sense created a question of fact as to whether the

stated reasons were pretextual.  Defendant again argues that Plaintiff cannot prevail on this claim because she has not introduced evidence that age discrimination was the "but for" cause of the decision to hire Ms. Vitale.  For the same reasons stated in reference to the position awarded Ms. Hibbard, the Court finds that Plaintiff has produced evidence sufficient for a jury to determine whether Plaintiff's age was the "but-for" reason that motivated the Defendant's hiring decision.  Likewise, since no discovery has actually been conducted in this case, the Court will deny the motion without prejudice to the Defendant filing another motion at the close of discovery.

> **D.    McEvoy Program**

Plaintiff also applied for a position at the McEvoy program.  She was not selected for this position.  Plaintiff cannot make out a prima facie case with reference to this position. As explained above, the Defendant awarded that position to Timothy Hummel, who was forty-nine years old when Defendant hired him.  Plaintiff has yet to put into the record her actual age; she simply alleges that she is older than 40.  Plaintiff admits in her brief in opposition to Defendant's motion, however, that "the successful candidates (with the exception of one) were all younger than the Plaintiff."  See Plaintiff's Brief in Opposition to Defendant's Motion, Dkt. 17 at 8.   Hummel is obviously the one hiree older than the Plaintiff.

Since Defendant hired someone older than the Plaintiff for the McEvoy program, she cannot make out her prima facie claim with reference to this position, and no other analysis is necessary.  To establish a prima facie case of age discrimination, a plaintiff must establish four elements: (1) that she was " a member of the protected class" at the time of the incident complained of; (2) that she "was qualified for the job"; (3) that she "suffered an adverse employment action"; and (4) that "the adverse employment action occurred under

circumstances giving rise to an inference of discrimination," such as being "replaced by someone 'substantially younger.'" Woodman, 411 F.3d at 76.  In the case of the fourth part of this test, the relevant question is "the age discrepancy between the discharged employee and her replacement."  Id. at 78; see also, Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 102 (2d Cir. 2001) (prima facie case made out when person hired was 42 and plaintiff was 64).  A person older than the Plaintiff cannot be "substantially younger" than her, and the Defendant's motion for summary judgment will be granted with respect to this claim.

### E.   Career Training Center 50% Position

As explained above, the fourth position at issue in this matter was a half-time position at Defendant's Career Training Center.  The evidence in this case recited above makes clear that Plaintiff did not apply for that position.  The evidence supplied by Defendant in the form of documents and affidavits makes clear that Plaintiff never submitted an application, and Plaintiff has not pointed to any documents that call this evidence into question.  Plaintiff therefore did not suffer an adverse employment action; she did not seek employment in this case.  Because Plaintiff did not apply for the position, she cannot make out a prima facie case.  See Woodman, 411 F.3d at 76; see also, e.g., Ruszkowski v. Kaleida Health Sys, 422 Fed. Appx. 58, 61 (2d Cir. 2011) (plaintiff's failure to show that he was even eligible to apply for the positions at issue demonstrates his failure "to establish a prima facie case that his age was the 'but for cause'" of Defendant's "'failure to hire him.'"); Velez v. Janssen Ortho, LLC, 467 F.3d 802, 807 (1st Cir. 2006) ("Put most simply, in the absence of a job application, there cannot be a failure-to-hire.").  Because Plaintiff cannot make out a prima facie case in reference to the Career Training Center Position, Defendant's motion is granted with respect to that claim.

IV.    **CONCLUSION**

For the foregoing reasons, the Defendant's motion for summary judgment will be GRANTED in part and DENIED in part.  The motion will be GRANTED with respect to Plaintiff's claims of age discrimination for the positions at the McEvoy program and the 50% position at the Career Training Center.  The motion will be DENIED without prejudice with respect to the two positions at the Lafayette Program.

IT IS SO ORDERED.

Dated: February 20, 2014

Thomas J. McEvoy
Senior, U.S. District Judge