UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EVELYN HANNA,

                        Plaintiff,

          v.                                5:13-cv-1164

ONONDAGA-CORTLAND-MADISON
BOCES,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## **DECISION and ORDER**

Plaintiff Evelyn Hanna commenced the instant action against Defendant Onondaga-Cortland-Madison BOCES ("BOCES"), alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 623, *et seq*. Presently before the Court is Defendant's second motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). See dkt. # 21.

**I.**     **FACTS**

This case concerns Plaintiff's claims that Defendant discriminated against her on the basis of her age in failing to hire her for certain available positions as a school social worker with BOCES.

Plaintiff Evelyn Hanna began working for Defendant BOCES in 1992. (Defendant's Statement of Material Facts, Dkt. no. 21-1 ("Defendant's Statement"), at ¶ 1).[1]  She was

---

[1]Local Rule 7.1(a)(3) requires each party to file a statement of material facts in

(continued...)

thirty-two years old at the time. Id. Plaintiff's first job was as a teaching assistant. Id. at ¶ 2. In August 1993 she interviewed for a position in the Deaf and Hard of Hearing ("DHOH") program. Id. at ¶ 3. She eventually received a Teaching Assistant/Interpreter ("TAI") position. Id. The DHOH program is a special education program designed to aid students in school districts using BOCES services who have hearing disorders and impairments. Id. at ¶ 4. Students in the program must be labeled "deaf" or "hard of hearing" to be able to

---

[1](...continued)
relation to motions for summary judgment. See L.R. 7.1(a)(3). The moving party is to file a statement that "set[s] forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue." Id. The party is to "set forth a specific citation to the record where the fact is established." Id. A party opposing the motion is required to file a response to this statement, which "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matched numbered paragraphs." Id. Any "denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs." Id. The Rule also provides that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Id. (emphasis in original). Here, the Plaintiff did not respond to the Defendant's Statement of Material Facts with a separate document that "mirrors" the statements made by the Defendant in "matched numbered paragraphs. Instead, Plaintiff's brief simply contains a section titled "Plaintiff's Response to Defendant's Statement of Material Facts." See Plaintiff's brief in opposition, dkt. # 26, at 3-4. That "response" contains two numbered paragraphs. The first numbered paragraph admits the factual allegations in certain numbered paragraphs in Defendant's statement, citing generally to the record to do so. The second numbered paragraph simply states that "Plaintiff denies the factual allegations contained in paragraphs 15, 19, 21, 22, 23, 25, 28, 30, 31, 32, 33, 36, 37, 38, 39, 40, and 49 of Defendant's Statement of Material Facts." Plaintiff makes no reference to record to explain the source of her dispute about these facts. Plaintiff's statement clearly contravenes the local rules and offers no support for her arguments about the evidence in this case. The Court must find that Plaintiff has not specifically controverted any of the properly supported facts in the Defendant's statement of material facts, and the Court must deem such facts admitted. The Court reminds the Plaintiff that the local rules require a properly supported statement of material facts as a means of drawing attention to the facts in dispute in the case, which is ultimately the issue on which a summary judgment motion turns. Failing to file a proper statement is usually fatal to a party's case.

participate in the DHOH program.  Id. at ¶ 5.  Students in the program range in age from pre-school through high school.  Id. at ¶ 6.  Some students in the program "mainstream" into ordinary classrooms with hearing children; they are accompanied by a sign-language interpreter.  Id. at ¶ 7.  Other DHOH students need more assistance and remain in self-contained classrooms.  Id.

During her career as a teaching assistant, Plaintiff spent about 20% of her time helping DHOH students in regular classrooms and 80% of her time in self-contained rooms.  Id. at ¶ 8.  Elementary-level classrooms for DHOH students typically had five to eight students.  (Id. at ¶ 9).

Beginning in the early 2000s, Plaintiff followed the advice of a BOCES supervisor and began to further her education.  (Id. at ¶ 10).  Plaintiff sought to advance her career beyond the teaching-assistant level and find new opportunities.  (Id.).  Plaintiff considered teaching or speech pathology.  (id.).  Plaintiff completed her associate's degree from Onondaga Community College.  (Id. at ¶ 11).  Eventually, she decided to pursue social work and enrolled in a Keuka College-affiliated extension program in 2007.  (Id. at ¶ 13).  She obtained a bachelor's degree in social work from Keuka in 2010.  That same year, she enrolled in the master's of social work program at Syracuse University.  (Id. at 13).  She received her Master's of Social Work in 2011.  (Id. at ¶ 14).

### i. Lafayette Program

On March 30, 2015, Defendant advertised two open School Social Worker positions in its Lafayette program.  (Id. at ¶ 15).   The Lafayette program is designed for students with serious emotional difficulties.  (Id. at ¶ 16).   Plaintiff submitted application packets for three of those positions via New York's "On-line Application System for Educators

("OLAS"), an on-line system for posting jobs and recruiting employees aimed at teachers and school administrators in the state. (Id. at ¶ 17).

Defendant maintains that BOCES follows a specific practice in soliciting and evaluating applications. Id. at ¶ 19. After advertising a position on OLAS, BOCES usually collects application packets for around two weeks. Id. After those two weeks have passed, personnel forwards the list of candidates to the BOCES department seeking to fill the position. Id. Most applications typically come through the OLAS system. Id.

BOCES received electronic application packets from 22 different candidates in response to the job positing for the two open positions. (Id. at ¶ 20). Another candidate who already worked for BOCES submitted her application offline, outside of the OLAS procedures. (Id.).

The BOCES Special Education Department has a procedure established to evaluate job applications. (Id. at ¶ 21). Once the applications are received, "an administrator" examines those applications. Id. Many candidates lack the requisite qualifications for the position, and these candidates are the first to receive rejection letters. (Id. at ¶ 22). If a candidate appears to have "good credentials and relevant training or experience," the Department will put that candidate on a list to be called for an interview. (Id. at ¶ 23).

Karen Koch, BOCES' Assistant Director of Special Education, performed the initial resume screening for the Lafayette positions. (Id. at ¶ 24). Koch was the only administrator who screened applicants. (Id. at ¶ 25). Koch removed Plaintiff's application from consideration during her initial screening, and BOCES did not offer Plaintiff an interview. (Id.

at ¶ 26). The majority of applications did not receive interviews for the positions. (Id. at ¶ 27).

Koch removed Plaintiff's application from consideration because she did not believe that Plaintiff's resume offered the right mix of skills or experience for the positions. (Id. at ¶ 28). Koch had never supervised Plaintiff and she had never supervised the DHOH program. (Id. at ¶ 29). Koch did not know Plaintiff's age at the time of her screening, and her only information about Plaintiff came through "the clues that the dates in Ms. Hanna's resume might have been able to provide." (Id. at ¶ 30). Koch did not know Plaintiff personally at the time she screened the applications, and cannot recall ever meeting Plaintiff or hearing about her. (Id. at ¶ 31). She had no knowledge about Plaintiff's work history outside of the information contained in her application. (Id.). Koch had no personal knowledge of any of Plaintiff's skills, abilities, or her personality. (Id.).

Though Plaintiff had many years of experience as a teaching assistant, Koch did not think that experience in the DHOH was similar enough to the skills needed in the Lafayette program to make the DHOH program "relevant preparation for a School Social Worker position in the Lafayette program." (Id. at ¶ 33). The DHOH program does not specialized in treating children with severe behavioral or emotional difficulties, delayed cognitive development, autistic disorders, and other difficulties. (Id. at ¶ 34). The chidlren sent to the BOCES' McEvoy and Lafayette programs from other school districts are generally considered the hardest cases. (Id. at ¶ 35). The children in the DHOH are much easier to work with than the children in the Lafayette program. (Id. at ¶ 36). DHOH classrooms might have a few difficult students, but Lafayette programs specialized in treating only the "toughest" cases. (Id. at ¶ 37). As a result, Koch did not consider DHOH program

experience sufficient to demonstrate a proven ability to work with severely disabled children like those enrolled in the Lafayette program. (Id. at ¶ 38). According to Koch, she rejected Plaintiff's application because her resume had nothing to suggest that she had regular or substantial contact with the types of "tough" students that she would have been required to teach at Lafayette. (Id. at ¶ 39).

BOCES typically hires people for School Social Worker positions who have demonstrated experience in dealing with children and adolescents who have severe behavioral or emotional disabilities. (Id. at ¶ 40). BOCES eventually hired two candidates to fill those positions, Heather Vitale and Lauren Hibbard. (Id. at ¶ 41). Ms. Vitale and Ms. Hibbard were both significantly younger than Plaintiff.

Hibbard possessed the relevant educational credentials and had several years of relevant work experience. (Id. at ¶ 42). She had a degree from SUNY Brockport, specializing in alcohol and substance abuse topics, and had worked for two years at Tully Hill Chemical Dependency Clinic and Confier Park Outpatient Clinic. Id. These qualifications were "attractive" to BOCES because students in the Lafayette program frequently have emotional issues connected to chemical dependencies. Id. Moreover, as the job posting required, Ms. Hibbard had experience working with children. Id.

Vitale had nearly two years of experience working as a Teaching Assistant in two BOCES programs at the time she was hired for the School Social Worker position. (Id. at ¶ 43). Vitale's daily work with students who had "very limited cognitive function or severe behavioral issues" represented almost "two years of very relevant, on-point experience" which left her "well qualified for the position of School Social Worker." Id.

Plaintiff applied for other positions as well as the two Lafayette positions here described. After failing to obtain even an interview for any of the positions for which she applied, Plaintiff filed a charge with the New York State Division of Human Rights. See Complaint, Dkt. No. 1, at ¶ 10. Plaintiff also filed her charge with the Equal Employment Opportunity Commission ("EEOC"), and eventually received a right-to-sue letter from the EEOC. Id. at ¶¶ 11-12. Plaintiff's Complaint alleges that Plaintiff, who "was over the age of 40," was "qualified and able to perform the essential functions of her position, and all positions to which she applied or expressed an interest in obtaining with the Defendant, despite her age." Id. at ¶¶ 6-7. Plaintiff avers that while she was employed by Defendant in 2012 she applied for three School Social Worker job positions posted by Defendant. Id. at ¶ 15. Two of those positions were offered through Defendant's "Lafayette Program" and the third was through Defendant's "McEvoy Program." Id. at ¶ 16. Defendant did not hire Plaintiff for any of those positions. Id. at ¶ 17. Instead, Plaintiff insists, Defendant hired younger, less qualified individuals for those positions. Id. at ¶ 18. Plaintiff contends that Defendant's actions violated her rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.

After the Plaintiff filed her complaint, but before the parties had engaged in any substantial discovery, Defendant filed a motion for summary judgment. Plaintiff responded to that motion. The Court issued a decision on February 20, 2014, granting the motion in part and denying the motion in part. See dkt. # 19. After the Court's decision, only Plaintiff's claims related to Defendant's failure to hire her for the two Lafayette positions remained. The parties then engaged in discovery. On September 15, 2014, Defendant filed a second

motion for summary judgment. Plaintiff has responded, bringing the case to its present posture.

## II.     STANDARD OF REVIEW

Defendant has filed a motion for summary judgment. Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (citing former FED. R. CIV. P. 56(c)). This standard provides that "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007)). In making this determination, the Court is "required to resolve all ambiguities and draw all possible factual inferences in favor of the party against whom summary judgment is sought." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)). Summary judgment is appropriate when "it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 86 (2d Cir. 1996).

## III.    DISCUSSION

Plaintiff alleges age discrimination in Defendant's failure to hire her for the Lafayette positions. Defendant seeks summary judgment on Plaintiff's claims.

### A.     Age Discrimination in Employment Act (ADEA)

Plaintiff raises her claim under the Age Discrimination in Employment Act ("ADEA"), which makes it "unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation,

terms, conditions or privileges" on the basis of age. 29 U.S.C. § 623(a)(1). The ADEA protects "individuals who are at least 40 years of age." 29 US.C. § 631(a).

When a plaintiff, as here, brings an employment discrimination claim under the ADEA and lacks direct evidence of discrimination, the court applies a "three-part burden shifting" process in evaluating the claim. McPherson v. N.Y City Dep't of Educ., 457 F.3d 211, 215 (2d Cir. 2006); see also, Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998) (permitting a plaintiff to prove age discrimination through circumstantial evidence rather than direct evidence because "'an employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in the employee's personnel file attesting to discriminatory intent.'") (quoting Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1999)). First, the plaintiff "bears the 'minimal' burden of setting out a prima facie discrimination case[.]" Id. To establish a prima facie case of age discrimination, a plaintiff must prove four elements: (1) that she was " a member of the protected class" at the time of the incident complained of; (2) that she "was qualified for the job"; (3) that she "suffered an adverse employment action"; and (4) that "the adverse employment action occurred under circumstances giving rise to an inference of discrimination," such as being "replaced by someone 'substantially younger.'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005). Once the plaintiff meets this burden, the plaintiff "is then aided by a presumption of discrimination" and the defendant must offer "a 'legitimate, non discriminatory reason' for the adverse employment action[.]" Id. After the defendant offers such a reason for the employment action, "the presumption evaporates and the plaintiff must prove the employer's proffered reason was pretext for discrimination." McPherson, 457 F.3d at 215. To prove the proffered reason was pretext in the ADEA context, a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-

- 9 -

for' cause of the challenged adverse employment action' and not just a contributing or motivating factor." Gorzynski, 596 F.3d at 106 (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180, 128 S. Ct. 2343 (2009)).

   Defendant contends that no evidence could support a finding that BOCES's hiring decisions were motivated by age discrimination. Instead, Defendant insists, the evidence supports only Defendant's contention that Plaintiff's application and resume lacked the training and experience which Defendant sought. After the Court's decision on Defendant's initial summary judgment motion, questions about two positions for which Plaintiff applied remain. The Court will examine each hiring decision about which Plaintiff complains in reference to the above-stated standards. At the outset, the Court notes two important considerations that are different at this point than when Defendant filed its initial motion for summary judgement: (1) at the time of that initial motion, Plaintiff opposed Defendant's statement of material facts with citations to the record, and the Court was not compelled to accept Defendant's facts as true; and (2) Defendant filed the motion before the parties had engaged in discovery, meaning that Plaintiff had not had an opportunity to depose Defendant's witnesses and challenge their claims that the employment decisions at issue

had been made for non-discriminatory reasons.[2]  Those considerations lead the Court to reach a different conclusion when faced with this motion for summary judgment.

### B.     Lafayette Program–Position Awarded to Ms. Hibbard

As a general matter, Defendant argues that the evidence establishes that the candidate hired for each position was more qualified than the Plaintiff and thus that BOCES had legitimate, non-discriminatory reasons for its hiring decisions.  Defendant also contends

---

[2]The Court found that the:

> way that the facts supporting this motion have been presented to the Court also counsel against awarding Defendant summary judgment on this portion of the claim.  The Court notes that Defendant filed this motion before any discovery had actually occurred, and before Plaintiff had an opportunity to examine any of Defendant's records in the case or take any depositions.  Defendant therefore had an opportunity to shape the evidence before the Court in a way that Plaintiff could not.  The evidence produced by the two sides in this case demonstrates this danger: Plaintiff could produce only an affidavit that articulated her suspicions about Defendant's conduct, while Defendant could attach exhibits and produce affidavits from parties Plaintiff would surely have sought to depose.  The Second Circuit Court of Appeals has "emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases[.]" Chertkova, 92 F3d at 87.  In such matters, "the employer's intent is normally at issue," and "it is rare indeed to find in an employer's records proof that a personnel decision was made for a discriminatory reason[.] Id.  As such, "affidavits and materials . . . must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination." Id.  Here, given the fact only one side has had an opportunity to examine all of the evidence in this case, the Court finds that granting summary judgment with reference to this claim is inappropriate.  The Court will deny the motion without prejudice to Defendant raising the issue again after the Plaintiff has had an opportunity to examine the evidence and depose witnesses.

Plaintiff has now had an opportunity to depose witnesses and probe the veracity of the evidence presented by the Defendant.  Rather than pointing to concrete weaknesses in that evidence developed in the discovery process, Plaintiff relies on the same perfunctory denials and the same "belief," articulated in her affidavit, that Defendant's real motivations for not hiring Plaintiff were discriminatory ones.  The Court is forced to conclude that Plaintiff did not take advantage of the opportunity afforded her by the Court to develop evidence to support her contentions that questions of fact exist in this matter.

that Plaintiff's resume did not reflect the qualifications Defendant considered necessary for the position, particularly because Plaintiff lacked significant and focused experience in supervising students whose primary disability involved "severe behavioral or emotional disabilities, delayed cognitive development, autistic disorders" and other similar conditions. Defendant also argues that Plaintiff has presented no evidence by which a jury could find that the Defendant's stated reasons for the hiring decisions were not the real reasons. Defendant contends that summary judgment should be granted on this basis.

The Court has already found that Plaintiff made out a prima facie case of age discrimination with reference to this position, and Defendant does not challenge that finding. The Court also found that Defendant had advanced legitimate, non-discriminatory reasons for deciding to hire Lauren Hibbard instead of Plaintiff. In its previous decision, the Court noted that:

> With reference to Lauren Hibbard, who was hired for one of the two Lafayette Program positions for which Plaintiff applied, Defendant points out that Hibbard's resume demonstrated that she had spent nearly three years working as a counselor with children, implementing treatment plans and conducting psychosocial assessments. Hibbard also interned for two years with children at a BOCES program. Defendant found this experience appealing, since many children in the Lafayette program suffered from emotional problems related to alcohol problems and substance abuse, areas in which Hibbard had expertise. Defendant contrasts this experience with Plaintiff's, and contends that Plaintiff's resume did not demonstrate the same experience of dealing with children in emotionally difficult circumstances. On that basis, Defendant insists, Hibbard was a better choice for the position.

None of the evidence presented since the initial motion leads the Court to a different conclusion. Defendant has met its burden here, and the burden shifts back to the Plaintiff "to prove that the employer's stated reasons are merely pretextual and that age

discrimination was the true reason for the adverse employment action." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

Much of Plaintiff's brief concentrates on an issue already decided by the Court in her favor, and which Defendant's brief does not really dispute: whether she has made out a prima facie case for age discrimination. Plaintiff also does not appear to deny that Defendant has advanced legitimate, non-discriminatory reasons for the hiring decisions it made. Unfortunately for the Plaintiff, she spends only a small portion of her brief addressing the one question truly at issue before the Court: whether there is evidence in the case by which a jury could conclude that the Defendant's stated reasons for hiring others instead of Plaintiff are pretext for the real reason: age discrimination. Plaintiff simply recites this requirement and then asserts that she has advanced evidence to support her version. Plaintiff does not analyze this evidence, but simply cites to it.

Plaintiff followed this same approach in responding to Defendant's earlier motion, pointing to several paragraphs from her affidavit filed in response to the summary judgment motion. See Plaintiff's Affidavit, at ¶¶ 19, 20, 28, 38, 101. Paragraph 19 states that Plaintiff had recognized over her years of working as an interpreter for Defendant that she had strong skills in behavior management, and had been encouraged by supervisors to seek additional education in an area that would allow her to use those skills. Id. at ¶ 19. She completed a Master's Degree in Social Work at Syracuse University in December 2011, graduating with a 3.67 GPA. Id. at ¶ 20.[3] Plaintiff admits that her initial resume may not have reflected these skills, but contends that she revised that resume in May 2013. Id. at ¶ 101. This claim offers

---

[3]Paragraphs 28 and 38 refer to Ms. Vitale's qualifications, which will be discussed below.

little support to her position, as the revisions occurred after the hiring decisions about which she complains. This is also exactly the argument that Plaintiff made in response to Defendant's previous motion.

The Court denied that earlier motion largely to give Plaintiff an opportunity to conduct discovery with an eye to uncovering evidence to support her pretext claims. The only additional evidence that Plaintiff has produced after that opportunity is the deposition that Defendant conducted of her. During that Deposition, when asked whether she thought age discrimination played a role in the decision to hire Lauren Hibbard for the position in question, Plaintiff stated that "I wouldn't rule it out 100 percent. I think there's a possibility, yes." (Plaintiff's Deposition, Exh. A to Defendant's Motion for Summary Judgment ("Plaintiff's Dep."), dkt. # 21-1, at 91). "Administrators," Plaintiff claimed, "were looking to fill this position with a certain profile," largely "because of the dynamics of the students they would be working with." (Id. at 92). Plaintiff did not contend that Hibbard was "less qualified" than her for the position, but pointed out that "I feel that she was younger and that's why they hired her." (Id.). She also alleged that Hibbard "was also given an internship with the BOCES during her schooling." (Id. at 93).

The Court will grant the Defendant's motion with respect to this position. Despite the opportunity provided by the Court to develop evidence to meet her burden and demonstrate pretext, Plaintiff offers only conclusory statements about considerations that may have motivated Defendant in its hiring decision. Because Plaintiff failed to respond to Defendant's statement of material facts with citations to the record, the Court must accept as true Defendant's statement of its reasons for the hiring decision. Even if the Court were not to accept these reasons, the Court would find that Plaintiff has failed to meet her burden of

demonstrating that these stated reasons are pretext for a discriminatory motion. The Court finds that no evidence exists to support Plaintiff's allegation that the stated reasons for Defendant's employment decision were not the real reasons. The Court must accept as true Defendant's position that the BOCES hired Ms. Hibbard because she had skills and experience Plaintiff lacked, particularly with reference to working with children with severe emotional and behavioral difficulties. Defendant's motion for summary judgment with respect to the position awarded Ms. Hibbard will be granted.

### C.     Lafayette Program–Position Awarded to Ms. Vitale

Plaintiff also asserts that age discrimination motivated Defendant's decision to award the second Lafayette position to Ms. Vitale. As with the first Lafayette position, Defendant argues that the hiring decision related to Ms. Vitale was based on her qualifications and experience. Vitale had been a Teaching Assistant in two special education programs run by the Defendant for more than two years. Those programs enrolled students who had severe cognitive, behavioral, or emotional issues. Defendant concluded that Ms. Vitale had worked very skillfully with these difficult students, and that these skills would translate successfully into a position as a School Social Worker. Moreover, though Vitale had not yet completed her MSW degree, Defendant had confirmed that Vitale was eligible for certification as a School Social Worker through New York State. All of these qualifications made Vitale a more suitable candidate for the position than Plaintiff, whose resume demonstrated that her primary experience involved students who were deaf or hard of hearing.

Because Plaintiff failed to respond to Defendant's statement of material facts with citations to the record, the Court must accept as true Defendant's statement of its reasons for

the hiring decision. Even if the Court were not to accept these reasons, the Court would find that Plaintiff has failed to meet her burden of demonstrating that these stated reasons are pretext for a discriminatory motive. As with the position that went to Ms. Hibbard, Plaintiff offers only conclusory and unsupported claims to demonstrate pretext.

Plaintiff did not use the opportunity afforded her to depose the persons who made the hiring decision in her case. The only evidence that Plaintiff has produced beyond her earlier affidavit in support of those claims came in her deposition. At that deposition, Plaintiff testified that her basis for claiming that Defendant discriminated against her was because "[t]hey hired someone younger, less qualified, and who had not even graduated and gotten her degree[.]" (Plaintiff's Dep., at 89). Plaintiff offered a number of allegations to support these claims. She pointed to what she alleged was favoritism toward Vitale. Plaintiff had applied for an internship with the BOCES and had been rejected, even when she offered to work without pay. (Id. at 94). Vitale, by contrast, had less schooling and experience than Plaintiff, but was supposedly awarded a paid internship. (Id.). Defendant hired Vitale for the position Plaintiff had sought, even though Vitale had not completed her degree. (Id.). Plaintiff also contended at her deposition that Defendant hired Vitale based on a resume that did not contain mention of the professional training and skills necessary for the position both women sought. (Id. at 95-96). Only after Plaintiff complained about Vitale's hiring did Defendant produce a resume that reflected the proper skills and experience for the positions. (Id. at 97-98). Plaintiff contends that the second resume was "fabricated" to support Defendant's position. (Id. at 100).

These claims are merely conclusory, and are refuted by affidavits referenced in Defendant's statement of facts and affidavits. They are not challenged with any additional

evidence produced by Plaintiff. Defendant points out that Vitale had two-and-a-half years of experience working on a daily basis with students who had "very limited cognitive function or severe behavioral issues," experience directly relevant to the Lafayette position for which she applied. (Defendant's Statement at ¶ 43). Karen Koch's affidavit addresses Plaintiff's claims about Vitale, and Plaintiff has produced no evidence other than her impressions to challenge that affidavit. (See Affidavit of Karen Koch, dkt. # 21-3 ("Koch Affidavit")). Koch, who had supervised Vitale at BOCES before she was hired for the Lafayette position, noted that Vitale had "years of very relevant, on-point experience as a Teaching Assistant" which "made her well qualified for the position of School Social Worker." (Id. at ¶ 28). The fact that Vitale had not yet completed her work for a Master's of Social Work did not matter, as "she was fully enrolled in the program and on track to graduate." (Id. at ¶ 31). Vitale had sufficient "credit hours of education to meet the state requirements for certification as a School Social Worker." (Id. at ¶ 31). Moreover, Koch relates that her "personal relationship" with Vitale only began when Vitale started working at BOCES as a secretary in the summary of 2009. (Id. at ¶ 32). They had no "personal connections" before that time. (Id.). Vitale may have looked after Koch's children on one occasion, but they did not have a permanent arrangement and did not have a close personal friendship. (Id. at ¶ 33). An affidavit from Mark Pettitt, Director of Personnel and Labor Relations for Defendant, also reveals that Vitale was never given a paid internship. (Affidavit of Mark Pettitt, dkt. # 21-6 ("Pettitt Affidavit") at ¶ 32).

The affidavit of Rosanna Grund, BOCES Director of Special Education, also supports Defendant's position. (see Grund Affidavit, dkt. # 21-4). Grund emphasizes that Vitale's BOCES experience over several years involved students "with serious emotional and behavioral issues," and that her success in those positions for two and a half years "made her

a competitive candidate" for the position in question. (Id. at ¶¶ 19-20).  Though Vitale did not use the OLAS system to apply, she submitted a resume for the School Social Worker position that "highlighted" experience "relevant to the types of work" the position required. (Id. at ¶¶ 22-23). Vitale went through the same interview process as the other candidates and did not receive any special consideration. (Id. at ¶¶ 25-26). In the end, Vitale was more qualified than Plaintiff for the position, especially since "Ms. Hanna's prior work experience did not make her a competitive candidate for any of the open positions." (Id. at ¶ 29).

In the end, Plaintiff offers no evidence to dispute these facts, or any of the facts advanced by the Defendant regarding its hiring decisions, other than conjecture and speculation.  Plaintiff's own conclusions that she was discriminated against are insufficient to withstand summary judgment. See Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999);[4] id. at 448;[5] Richardson v. N.Y. Dep't. of Correctional Serv., 180 F.3d 426, 447 (2d Cir. 1999).[6]  That, combined with the fact that the Court must accept the Defendant's explanation for their hiring decision as true, means that the Defendant's motion must be granted with respect to the position obtained by Ms. Vitale.

---

[4](Plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination.")

[5] As indicated in Bickerstaff, on a motion for summary judgment the Court:

> must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. This undertaking is not one of guesswork or theorization. After all, an inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist. Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances.

Bickerstaff, 196 F.3d at 448 (internal quotation marks and citations omitted).

[6](affirming summary judgment for employer where employee offered only her own general claim of discrimination to show that the employer's legitimate reason for terminating her was pretextual).

## IV. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment, dkt. # 21, is GRANTED, and Plaintiff's remaining claims are dismissed.

IT IS SO ORDERED.

DATED: December 3, 2014.

Thomas J. McAvoy
Senior, U.S. District Judge

- 19 -